Joanne CHENOT, Executrix of the Estate of Fred Chenot, Deceased, and Joanne Chenot in Her Own Right,

v.

A.P. GREEN SERVICES, INC., a/k/a Bigelow–Liptak Corporation, A.P. Green Industries, Inc. f/k/a A.P. Green Refractories Co., A–Best Products Company, Inc., in its Own Right and as Successor in Interest to Asbestos Products Company, Allied Glove Corporation, Armstrong World Industries, Inc., Asbestos Claims Management (AMAC) Successor by Change of Name Only to the National Gypsum Company, Beazer East, Inc., in its Own Right and as Successor in Interest to Koppers Co. Inc. and Other Related Companies Including Thiem Corp., Beazer USA Inc. and Beazer P. LC, CBS Corporation f/k/a Westinghouse Electric Corporation, Dravo Corporation, Durabla Manufacturing Company, in its Own Right and as Successor to Durabla Canada Ltd., the Flintkote Company, GAF Corporation, in its Own Right and as Successor in Interest to the Ruberoid Company, the Gage Company f/k/a Pittsburgh Gage and Supply Company, George V. Hamilton Inc., Hatzel & Buehler Inc., Limbach Company, Mahoning Valley Supply Company of Youngstown, Ohio, the Marmon Group, Inc., in its Own Right and as Successor in Interest to the Cerro–Marmon Corp, Cerro Corp, Cerro Wire & Cable Co., Inc., the Rockbestos Co., and the Rockbestos Products Corp., McCarls, Inc., Ms Jacobs & Associates, OIC Valves, Fabri–Valve, Division of ITT Grinnell Valve Company Inc., Cashco, Inc., Dezurik, Inc., Crane Valve Group, Marlin Valve, Ohio Edison Company, Okonite Company Owens Illinois Inc., Pabst Electric Company, Inc., Rutland Fire Clay Company, the Sager Corporation, Successor in Interest to the Sager Glove Corporation, Townsend & Bottum, Inc., United States Gypsum Company, Wheeler Protective Apparel, Inc., Metropolitan Life Insurance Company a/k/a Metropolitan Insurance Company, Appellees,

v.

Hardware & Supply Company, Industrial Brown Hoist Corporation, d/b/a American Hoist & Derrick Co., Inc., Leeds & Northrup Company, W.M. Pattison Supply Company, American Blower Supply Inc., Tom Brown Inc., a/k/a Tom Brown Industrial Supply Company, Illes Power & Control Company, Pennsylvania & West Virginia Supply a/k/a Ross Willoughby Company, Scott Lumber Company d/b/a the Louis Berkman Company, Belden Brick Company, Alltel Supply Inc., f/k/a Buckeye Telephone & Supply Company, Building Products Supply Company, Inc., Argo Packing Company, F & L Holding Company, Inc., f/k/a Frick & Lindsay Company, Milton Roy Company the Gage Company

f/k/a Pittsburgh Gage & Supply Inc., A–S–H Industries a/k/a Allen Sherman Hoff Company, Graybar Electric Company Inc., Eaton Corporation, Successor–in–Interest to Cutler–Hammer, Inc., Appellees.

Appeal of: Joanne Chenot.

Superior Court of Pennsylvania.

Argued April 27, 2004.

Filed March 13, 2006.

**58**

David Rodes, Pittsburgh, for appellant.

Michael R. Bucci, Pittsburgh, for Beazer East, appellee.

Mark Shepard, Pittsburgh, for Ohio Edison, appellee.

BEFORE: HUDOCK, GANTMAN, and POPOVICH, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Joanne Chenot, as Executrix of the Estate of Fred Chenot, deceased, and in her own right, appeals from the order of the Allegheny County Court of Common Pleas, which granted summary judgment in favor of Appellee, Beazer East, Inc. ("Beazer").[1] We reverse and remand for further proceedings consistent with this disposition.

¶ 2 The relevant facts and procedural history of this appeal are as follows. Fred Chenot ("decedent") worked as a helper for an independent contractor ("Philip Carey") in 1951. Philip Carey performed work for the Koppers Company ("Koppers"), predecessor in interest to Beazer, at Koppers' Kobuta manufacturing facility outside of Pittsburgh, PA.[2] While working as a helper for Philip Carey at Koppers' Kobuta facility, decedent removed existing insulation containing asbestos from the tanks and pipes and replaced it with new insulation containing asbestos products. During the process, he was exposed to considerable dust created by both the tear out of old asbestos insulation as well as the dust created by the installation of new asbestos insulation. Decedent's known exposure to occupational asbestos was at the Kobuta facility in 1950–1951 and at Ohio Edison's R.E. Burger Power Station from 1954–1955. After 1955, decedent stopped working with the insulators. None of his subsequent employment resulted in asbestos exposure.

¶ 3 Decedent was diagnosed with mesothelioma on September 24, 1998.[3] On Au-

---

1. Appellant's claims against the other named defendants have been resolved by settlement, dismissal, or judgment. By letter dated October 19, 2004 and filed October 20, 2004, Appellant informed this Court that she had settled her claims with Appellee Ohio Edison Company and was withdrawing her appeal as to Ohio Edison. Accordingly, Appellant's claims as to Ohio Edison are withdrawn, and the only remaining Appellee in this appeal is Beazer.

2. The Koppers Kobuta facility manufactured materials used to produce synthetic rubber, including butadiene, styrene, and polystyrene.

3. Mesothelioma is "a cancer of the mesothelial tissue surrounding the lung, which is a rare disease with the exception of those exposed to asbestos." *Sporio v. W.C.A.B. (Songer Construction)*, 553 Pa. 44, 48, 717 A.2d 525, 527 (1998). Mesothelioma "is medically attributable specifically to exposure to asbestos or asbestine products." *Gutteridge v. A.P. Green Servs.*, 804 A.2d 643, 652 (Pa.Super.2002),

gust 4, 1999, decedent filed a complaint in the Allegheny County Court of Common Pleas alleging damages caused by his exposure to asbestos-containing products during the course of his employment. As to Beazer, Appellant specifically charged premises liability, alleging Beazer breached its duty to decedent as a business invitee to maintain the Koppers premises in a reasonably safe condition and/or to warn or protect decedent against the latent hazardous dangers of transportable respirable asbestos fibers arising from the use of asbestos on its premises. Decedent died on January 12, 2000, during the pendency of his claim, and the court substituted Appellant as plaintiff.

¶ 4 During the course of discovery, Appellant repeatedly sought responses from Beazer, in relevant part, to determine the scope of Koppers knowledge about asbestos and its use on the Kobuta premises. On June 26 and July 13, 2001, Appellant filed two separate motions to compel answers to Appellant's discovery requests addressed to Beazer and obtained an order dated July 20, 2001, compelling Beazer to respond within twenty (20) days. Again, on April 25, 2002, Appellant filed another motion to compel Beazer to respond to the same discovery requests and another order was issued on April 29, 2002, directing Beazer to completely answer Appellant's discovery requests.

¶ 5 Without complying with the court's orders, Beazer filed a motion for summary judgment on May 15, 2002, on the grounds that Appellant had failed to identify Koppers as a manufacturer or supplier of asbestos-containing products. Beazer contended it was entitled to judgment as a matter of law because Appellant had failed to meet the requirements of *Eckenrod*.[4] In the alternative, Koppers asserted the components it designed, installed, or maintained were "improvements" to real property, and Appellant's claims were barred by the statute of repose under 42 Pa. C.S.A. § 5536.

¶ 6 On June 21, 2002, Appellant filed another motion to compel full and complete answers to discovery requests addressed to Beazer. The motion also requested sanctions in the form of striking Beazer's defenses and deeming the allegations contained in Appellant's complaint as admitted.

¶ 7 On June 25, 2002, Beazer responded to Appellant's motion to compel and motion for sanctions, claiming Appellant's discovery requests were overly broad. Beazer also maintained it was not impeding the discovery process, Appellant's discovery was just a "fishing expedition," and the motion should be denied. Nothing in the record appears to have addressed Appellant's motion for sanctions or Beazer's response.[5]

¶ 8 On August 2, 2002, Appellant filed a response in opposition to Beazer's motion for summary judgment. Appellant thoroughly argued her premises liability claim

---

*appeal denied*, 574 Pa. 748, 829 A.2d 1158 (2003).

4. *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988), *appeal denied*, 520 Pa. 605, 553 A.2d 968 (1988) (pertaining to product identification).

5. In Appellant's reproduced record, there is what purports to be a *bona fide* order of the court dated June 24, 2002, granting Appellant's motion to compel discovery responses and further directing sanctions in the form of striking Beazer's defenses and deeming admitted the allegations in Appellant's complaint. The order, however, does not appear on the docket or in the certified record. *See Krosnowski v. Ward*, 836 A.2d 143 (Pa.Super.2003) (reiterating rule that documents do not become part of official record simply by including copies in reproduced record). Therefore, we cannot consider it.

against Koppers. Appellant further explained that Beazer had failed to provide full and complete answers to specific interrogatories, which would establish that Koppers knew or should have known about the existence and risk of asbestos-related lung diseases. Appellant also argued there was direct testimony in the case so far regarding decedent's direct exposure to asbestos-containing substances at the Kobuta facility and his exposure was significant.

¶ 9 On November 15, 2002, Beazer filed a "supplemental motion for summary judgment" addressing Appellant's premises liability claim. In the motion, Beazer made several assertions: (1) Koppers was originally only a lessee of the Kobuta facility but might actually have been an owner of a portion of the facility during the time decedent worked there as an employee of Philip Carey in 1951; (2) Koppers was operating its plant at the request of and for the benefit of the United States government; (3) Appellant failed to establish the nature of decedent's exposure to asbestos while working at the Koppers facility or the regularity of such exposure; (4) Appellant did not establish a duty or breach of duty owed to decedent, as decedent worked for a highly qualified independent contractor whose work Koppers neither directed or controlled; (5) the court should take judicial notice of the fact that decedent's employer was a major player in the insulation industry; and, (6) "[t]he components designed, built or operated by Koppers constituted 'improvements' to real property, as defined in Pennsylvania's statute of repose, codified at 42 Pa.C.S.A. § 5536," which barred Appellant's claims. (Motion for Summary Judgment, filed 11/15/02, at 1–4; R.R. 983a–986a).

¶ 10 The case was placed on the January 2003 trial list. On January 3, 2003, the trial court granted Beazer's motion for summary judgment. On January 17, 2003, Appellant filed a motion for reconsideration. Appellant argued (1)she had established decedent's exposure to asbestos at Koppers' facility; (2) as a member of the Industrial Hygiene Foundation and the National Safety Council in the 1930's and 1940's, Koppers received information from these organizations regarding the risks inherent in asbestos exposure; (3) Koppers owed a duty of care to decedent as a business invitee; (4) Koppers breached its duty by failing to warn decedent of the hazards of asbestos exposure; and, (5) Koppers' breach of that duty was a substantial factor in causing decedent's death. Given Koppers' actual knowledge and its failure to warn decedent, coupled with evidence of decedent's unchallenged exposure to asbestos at Koppers' facility, Appellant urged the court to reconsider and vacate its order granting summary judgment. On January 21, 2003, the trial court denied reconsideration.

¶ 11 The claims remaining in the case settled without trial in February 2003. By order dated April 7, 2003, and entered April 9, 2003, the court marked the case settled and discontinued. This timely appeal followed.

¶ 12 Appellant raises the following issues for our review:

WHETHER A POSSESSOR OF LAND IS LIABLE TO AN EMPLOYEE OF A CONTRACTOR FOR INJURIES CAUSED BY THE POSSESSOR'S INDEPENDENT NEGLIGENCE?

WHETHER THE CIRCUMSTANCES OF THIS CASE PLACE IT WITHIN ONE OF THE EXCEPTIONS TO A POSSESSOR'S NONLIABILITY TO AN EMPLOYEE OF AN INDEPENDENT CONTRACTOR?

(Appellant's Brief at 5).

¶ 13 "Our scope of review of an order granting summary judgment is plenary."

*Harber Philadelphia Center City Office Ltd. v. LPCI Ltd. Partnership,* 764 A.2d 1100, 1103 (Pa.Super.2000), *appeal denied,* 566 Pa. 664, 782 A.2d 546 (2001). "[W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact." *Id.* "We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." *Caro v. Glah,* 867 A.2d 531, 533 (Pa.Super.2004) (citing *Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001), *cert. denied,* 536 U.S. 938, 122 S.Ct. 2618, 153 L.Ed.2d 802 (2002)). All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party. *Curran v. Philadelphia Newspapers, Inc.,* 497 Pa. 163, 439 A.2d 652 (1981).

¶ 14 Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of her cause of action. *Grandelli v. Methodist Hosp.,* 777 A.2d 1138, 1145 n. 7 (Pa.Super.2001). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa. R.C.P. 1035.2. In other words, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense, which could be established by additional discovery or expert report and the moving party is entitled to judgment as a matter of law," summary

judgment is appropriate. *Id.; Abbott v. Schnader, Harrison, Segal & Lewis, LLP,* 805 A.2d 547, 552 (Pa.Super.2002), *appeal denied,* 573 Pa. 708, 827 A.2d 1200 (2003). Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense. *Grandelli, supra* at 1143 (citing Pa.R.C.P. 1035.2 Note).

¶ 15 "Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions." *Grandelli, supra* at 1144. The appellate Court will disturb the trial court's order only upon an error of law or an abuse of discretion. *Caro, supra.*

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Miller v. Sacred Heart Hosp.,* 753 A.2d 829, 832 (Pa.Super.2000) (internal citations omitted).

> "Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden." *Paden v. Baker Concrete Constr., Inc.,* 540 Pa. 409, [412,] 658 A.2d 341, 343 (1995) (citation omitted).
>
> > [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if...charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of dis-

cretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Id.* (internal quotations and citations omitted).

*Bartlett v. Bradford Publishing, Inc.,* 885 A.2d 562, 566, (2005).

¶ 16 Appellant contends that when decedent worked at Koppers, Koppers had extensive knowledge of the dangers of asbestos exposure. Koppers therefore owed decedent a duty to provide a safe work environment. Koppers breached this duty by (1) maintaining high quantities of asbestos on its premises; (2) structuring its construction projects in a manner that resulted in several contractors handling asbestos products in decedent's work area without taking steps to control the contractors' activities; (3) specifying asbestos-containing insulation for the work of decedent's employers and other contractors, without requiring appropriate precautions; and, (4) supplying large quantities of defective, asbestos-containing insulation for use by decedent's employer and other contractors. Further, Appellant avers Koppers did not surrender possession and control of the premises to Philip Carey. Instead, Koppers supervised the work done by Philip Carey. Thus, Appellant maintains Koppers was directly responsible for decedent's injuries. Alternatively, Appellant argues that even if Koppers had relinquished control of the premises to Philip Carey, Koppers is still liable for decedent's injuries. Appellant submits her direct claims of negligence are actionable under Pennsylvania law, notwithstanding decedent's status as an employee of an independent contractor. Appellant submits

the trial court misapprehended the law, based upon its overly broad application of the rule limiting a landowner's liability for injuries to employees of independent contractors.

¶ 17 Appellant further argues the trial court also misapprehended the law regarding the "superior knowledge" exception to landowner liability law. Appellant insists there was sufficient record evidence to create a triable issue of fact on the "superior knowledge" exception, citing *Gutteridge, supra.* Appellant also avers the court failed to address Appellant's contention that the various contractors' installation of massive amounts of asbestos in close proximity to one another involved a "peculiar risk" related to decedent's job. Appellant concludes the trial court erred when it entered summary judgment in favor of Beazer, because Appellant demonstrated a jury issue on liability.

¶ 18 In response, Beazer contends Philip Carey was an independent contractor intimately knowledgeable about the hazards of asbestos exposure. Beazer avers Koppers relinquished control of the premises when it hired Philip Carey. Further, Beazer maintains Koppers did not control the scope or manner of Philip Carey's work in the Kobuta facility. Beazer asserts Appellant has failed to show Koppers possessed knowledge of the inherent harm of asbestos superior to Philip Carey's knowledge. Alternatively, Beazer contends the U.S. Government owned and controlled the section of the facility in which decedent worked. Beazer asserts Appellant has not offered evidence that Koppers knew more about the dangers of asbestos than the government or Philip Carey.

¶ 19 In support of its argument, Beazer relies on *Mentzer v. Ognibene,* 408 Pa.Super. 578, 597 A.2d 604 (1991), *appeal denied,* 530 Pa. 660, 609 A.2d 168 (1992).

*Mentzer* involved the employee of an independent contractor who was injured while working as a carpenter on the construction of a building. The employee sustained injuries when he fell through a hole in the floor cut for an internal stairway. *Id.* at 607. The *Mentzer* Court, however, noted: "[T]he employer of an independent contractor is not liable for physical harm caused another **by an act or omission of the contractor or his servants.**" *Id.* at 610 (emphasis added). Thus, *Mentzer* supports immunity from liability for Koppers as the employer of an independent contractor, where the negligence of the independent contractor or its employees causes the injury.[6]

¶ 20 Even assuming there are issues of fact on whether Koppers had knowledge superior to Philip Carey, Beazer submits the "government contractor defense" precludes liability and recovery.[7] Beazer states Koppers was an agent of the federal government's Rubber Reserve Company for the production and manufacture of butadiene and styrene, the government owned and controlled that section of the Kobuta facility when decedent worked there, and Appellant has not claimed Koppers knew more than the government or decedent's employer about the potential hazards involved in the construction or operation of the Kobuta facility. Beazer concludes summary judgment in its favor should be affirmed. On this record, we cannot agree.

■■■■■ ¶ 21 "Employees of independent contractors...are 'invitees' who fall within the classification of 'business visitors.'" *Gutteridge, supra* at 655. "The duty of care owed to a business invitee...is the highest duty owed to any entrant upon land." *Id.* at 656.

> The landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care. Our case law sets forth the duty that a possessor of land owes to business invitees as follows:
>
> > A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
> >
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.
>
> Pennsylvania law imposes no general duty on property owners to prepare and maintain a safe building for the benefit of a contractor's employees who are

---

6. The *Mentzer* court also explained the rationale behind this rule and focused on injuries caused by the acts of the independent contractor or its employees:

 The foregoing principles are well-grounded in reason. They recognize that the owner who has entrusted the responsibility for the work to a qualified contractor justifiably depends upon the contractor's expertise. The owner relinquishes control to the contractor and should not be held liable for harm resulting from unforeseen risks **aris-**

 **ing from the ordinary negligence of the contractor.**

 *Id.* (emphasis added). Here, Appellant contends Beazer is liable because Koppers' own conduct caused decedent's injuries. Therefore, *Mentzer* is not necessarily dispositive, and its application to the present case is subject to debate.

7. In its brief on appeal, Beazer completely abandons its statute of repose argument in favor of this "government contract" argument.

working on that building. Rather, our law generally insulates property owners from liability for the negligence of independent contractors and places responsibility for the protection of the contractor's employees on the contractor and the employees themselves. Nevertheless, as noted above, a landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care. Additionally, certain exceptions exist to the general rule that otherwise would limit the property owner's liability....

The "peculiar risk" doctrine was endorsed by our Supreme Court when it adopted sections 416 and 427 of the Restatement (Second) of Torts in *Philadelphia Electric Co. v. James Julian, Inc.,* 425 Pa. 217, 228 A.2d 669 (1967). A "peculiar risk" (or "special danger") exists when: (1) a risk is foreseeable to the employer of an independent contractor at the time the contract is executed (that is, if a reasonable person in the position of the employer would foresee the risk and recognize the need to take special measures); and (2) the risk is different from the usual and ordinary risk associated with the general type of work done (that is, the specific project or task chosen by the employer involves circumstances that are substantially out-of-the ordinary).

\* \* \*

Nevertheless, a landowner acting solely in its capacity as landowner owes a duty to warn an unknowing independent contractor of existing dangerous conditions on the landowner's premises where such conditions are known or discoverable to the owner. The landowner's duty to warn is owed irrespective of whether the independent contractor exercises full control over the work and premises entrusted to him. However, an owner of land who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor. Furthermore, the employer of an independent contractor has no duty to warn either the contractor or his employees of a condition that is at least as obvious to them as it is to him. The question of whether a landowner owes a duty to warn an independent contractor of dangerous conditions on the premises turns on whether the owner possesses "superior knowledge" or information which places him in a better position to appreciate the risk posed to the contractor or his employees by the dangerous conditions.

\* \* \*

[The defense of landowner out of possession] is not available to counter an allegation of "superior knowledge." A landowner's duty to warn exists irrespective of whether an independent contractor exercises full control over the premises if the landowner possesses "superior knowledge," which places him in a better position to appreciate risks posed by a dangerous condition.

*Id.* at 656–58 (some internal citations and quotation marks omitted). "Courts must construe the 'peculiar risk' doctrine narrowly, in recognition of the fact that most construction work contains some element of risk." *Rudy v. A–Best Products Co.,* 870 A.2d 330, 335 (Pa.Super.2005), *appeal denied,* 584 Pa. 714, 885 A.2d 533 (2005).

¶ 22 On the issue of a landowner's "superior knowledge" in asbestos cases, the *Gutteridge* case is particularly instructive.

In *Gutteridge,* the plaintiff offered evidence that the dangers of asbestos products were not obvious to him. The defendant landowner argued the hazards posed by asbestos in the workplace were equally known to the plaintiff's employer. The Court noted, however, that the defendant landowner had failed to substantiate this defense. Thus, the question of whether the independent contractor knew of the danger and failed to warn the plaintiff posed a material factual dispute. Because the landowner's defense was that the plaintiff's employer knew of the hazards of asbestos, the landowner had to substantiate its defense with facts of record, which it had not done. The Court stated: "Appellant averred facts sufficient to place into material dispute the question of whether PECO, in its capacity as landowner and not employer, violated its duty to Mr. Gutteridge, a business invitee, because it possessed superior knowledge concerning the hazards posed by invisible asbestos contamination. Consequently...the trial court erred in granting summary judgment to PECO." *Id.* at 660. *Compare Rudy, supra* (holding summary judgment for landowner was proper where landowner presented evidence that plaintiff also had substantial knowledge of asbestos hazards through his union, employers, and co-workers).

 ¶ 23 In the present case, with respect to Appellant's "superior knowledge" argument, the record reflects the following. Decedent worked at the Koppers Kobuta facility for almost one year, from 1950 to 1951, as a helper for Philip Carey. In its document, "The Story Behind Kobuta," Koppers stated that the facility was constructed with thousands of linear feet of asbestos pipecovering, over one million square feet of asbestos block, and over one million pounds of asbestos cement. Koppers specified the use of asbestos in the expansion and retooling project, on which decedent worked. Therefore, Koppers knew of the presence of asbestos-containing products at its Kobuta facility.

¶ 24 Likewise, Koppers supplied the asbestos materials for use by the independent contractors, according to the record. In addition, Appellant presented an affidavit from Richard Paul, one of decedent's co-workers, who certified that decedent had been exposed to the removal of pre-existing asbestos-containing material from tanks and pipes and the application of new asbestos-containing material. Beazer has not pointed to anything in the record to indicate decedent knew about the dangers of asbestos when he worked at the Kobuta facility.

¶ 25 Moreover, Appellant also claimed Koppers was a member of the National Safety Council (NSC) since 1918. Richard A. Lemen, Ph.D., one of Appellant's experts, concluded in his report dated December 16, 2002, that by the 1930's, all members of the NSC knew of the dangers of asbestos. Assuming Koppers' long-time NSC membership, Appellant created a genuine issue of material fact as to whether Koppers' knowledge of the presence and hazards of asbestos was superior to the that of the independent contractors who were employed at the Kobuta facility, which placed Koppers in a better position to appreciate the risk posed to decedent by the presence and use of asbestos in its Kobuta facility. *See Gutteridge, supra* at 660 (relying in part on expert report to conclude plaintiff had created genuine issue of material fact on whether defendant landowner had "superior knowledge" of danger of asbestos).

¶ 26 Beazer, however, maintains Appellant did not establish Koppers was a member of the NSC or other industrial organizations. In her reply brief on appeal, Appellant responds that Beazer was

derelict in answering discovery, which specifically asked whether Koppers had been a member of the NSC. By failing to respond to open discovery, in violation of several court orders, Beazer ensured the absence of this evidence in the record. Appellant states Beazer eventually did answer that it had been a member of the NSC since 1918. As such, Appellant concludes Beazer should be estopped from objecting to Appellant's reliance on what turns out to be an undisputed fact: Koppers' membership in the NSC.

¶ 27 Beazer also insists that Dr. Lemen's report did not specifically mention Koppers. Instead, Beazer contends the report referred exclusively to Ohio–Edison. Further, Beazer states Appellant's evidence does not address Koppers' knowledge or how its knowledge compared to Philip Carey's knowledge. These disputes on appeal suggest that the court's grant of summary judgment in Beazer's favor might have been premature. *See* Pa. R.C.P. 1035.2(2); *Baesel v. New Blvd. Baking Co., Inc.,* 410 Pa.Super. 591, 600 A.2d 610 (1991) (holding court erred in granting summary judgment despite outstanding discovery requests). *Compare Manzetti v. Mercy Hosp. of Pittsburgh,* 565 Pa. 471, 776 A.2d 938 (2001) (stating: "Summary judgment can be entered prior to completion of discovery in matters where additional discovery would not aid in the establishment of any material fact").

¶ 28 For several reasons, therefore, we conclude the best resolution is to reverse and remand this case to the trial court for further proceedings. First, in the opinion in support of its decision, the trial court wrote:

> With respect to [Appellant's] claims against...Beazer East, Inc. based on premises liability, the plaintiff under *Gutteridge* and the "[superior] knowledge doctrine" must establish that

[Koppers] possessed superior knowledge concerning the existence of asbestos contamination in [decedent's] workplace and [Koppers] was in a better position than [decedent] and his employer to appreciate the danger posed by the asbestos contamination. [Appellant] argues that [Koppers'] memberships and committee participations in the Industrial Hygiene Foundation, the National Safety Council and access to the medical literature describing the hazards of asbestos are sufficient to create liability on the premises owner.

> In *Gutteridge,* the claimants produced affidavits of experts that established that PECO had superior knowledge that was not available to its independent contractors or to their employees. In this case, [Appellant] has not relied upon such affidavits that would create a material issue of fact that [Koppers] had access to any more knowledge than would be available to [decedent's] employer.

(Trial Court Opinion, dated August 5, 2003, at 5–6). We respectfully disagree with the court's analysis. In *Gutteridge,* the claimants did not have to establish that the landowner (PECO) had knowledge superior to the claimant's employer. *Gutteridge* suggests the burden was on PECO to establish the hazards posed by asbestos in the workplace were equally well known by claimant's employer (AT & T). As applied to the present case, the burden is on Beazer to show Philip Carey and/or decedent knew as much or more about the risks involved in working with or around asbestos products. *See id.* at 660. *See also Rudy, supra.* Here, Appellant demonstrated that members of the NSC and the industry knew of the dangers of asbestos exposure, and Koppers' membership in the NSC put Koppers squarely in the informed category. Appellant did not have

to show that Koppers knew more about the hazards of asbestos than decedent's employer. To the contrary, Beazer had to show as part of its defense that Philip Carey and/or decedent knew as much or more than Koppers. The court improperly shifted the burden to Appellant.

¶ 29 Another reason for remand pertains to Appellant's "peculiar risk" argument. Here, Koppers engaged Philip Carey, decedent's employer, and various other contractors to do work directly related to Koppers' use of the premises. The activities of decedent's employer and other contractors exposed decedent to active asbestos. Evidence of record demonstrates Koppers prepared plans and specifications necessary for Philip Carey's work, did the engineering, furnished the materials, labor and equipment and work required for its Kobuta plant expansion. The work performed by decedent and his employer was at the behest of Koppers. Koppers knew or should have known it was exposing employees of independent contractors to reasonably foreseeable asbestos hazards and should have recognized the need to take special measures. Contrary to the facts in *Gutteridge,* Appellant met the first element of the "peculiar risk" doctrine.

¶ 30 Whether the risk of exposure to asbestos is different from the usual and ordinary risk associated with the general type of work done by decedent at the Kobuta facility depends in part on what decedent was hired to do. *See Rudy, supra.* Appellant presented expert evidence to show that even exposure to invisible asbestos particles can cause decedent's disease. Asbestos is widely accepted as an inherently dangerous product. Thus, there might just be a triable issue on whether decedent's work involved a risk different from the usual and ordinary risk associated with the general type of work done in his job.

¶ 31 Finally, we note, on appeal Beazer has completely abandoned its statute of repose argument. Pennsylvania's statute of repose regarding construction projects in relevant part states:

§ 5536. Construction projects

(a) General rule.—Except as provided in subsection (b), a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

\* \* \*

(3) Injury to the person or for wrongful death arising out of any such deficiency.

\* \* \*

(b) Exceptions.—

\* \* \*

(2) The limitation prescribed by subsection (a) shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or wrongful death for which it is proposed to commence an action or proceeding.

\* \* \*

42 Pa.C.S.A. § 5536(a)(3); (b)(2). Arguably, Beazer was faced with overcoming subsection (b)(2), particularly in light of its own admission that Koppers "may actually have been an owner of a portion of the facility during the...period in 1951 when [decedent] was employed there as an em-

ployee of Philip Carey." (Motion for Summary Judgment, filed 11/15/02, at 2; R.R. at 984a). There is at least a material issue of fact as to whether Koppers actually was in possession of the improvement, as owner, tenant or otherwise, in 1951 when decedent was exposed to asbestos at Koppers' Kobuta facility. Thus, we decline to address this topic any further.

¶ 32 We also note that Beazer, for the first time on appeal, raises a detailed "government contract" defense. In 1988, the United States Supreme Court adopted an evolved formulation to determine liability, holding that a government contractor is not liable for design defects in military equipment if:

1) the United States approved reasonably precise specifications;

2) the equipment conformed to those specifications; and

3) the government contractor warned the United States about the dangers in the use of the equipment known to the contractor but not to the government.

*Conner v. Quality Coach, Inc.*, 561 Pa. 397, 407, 750 A.2d 823, 828 (2000) (quoting *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 2518–19, 101 L.Ed.2d 442, 457 (1988)).

▮ ¶ 33 In Appellant's reply brief, she argues Beazer failed to present sufficient evidence to carry its *prima facie* burden on any of the three elements of the "government contract" defense.[8] This defense is also fact specific and requires the trial court's assessment of whether the defense must be submitted to a jury or is sufficient to be decided as a matter of law. We decline to decide either defense in this appeal based on the present record.

¶ 34 For the foregoing reasons, we reverse the order granting summary judgment in favor of Beazer and remand the case to the trial court for further proceedings consistent with this decision.

¶ 35 Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

---

**8.** Beazer's "government contract" defense was not fully presented to the trial court, except in conclusory statements. Because we are remanding the case to the trial court for further proceedings, both parties shall have the opportunity to argue the specifics of this defense if they so choose.