J-A15036-25

2025 PA Super 185

|  |  |  |
|---|---|---|
| MARY FISHER AND BRETT FISHER, Appellants | : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. |  |  |
| DONNA GINGERICH, Appellee |  | No. 1729 MDA 2024 |
| APPEAL OF: MARY FISHER |  |  |

Appeal from the Order Entered November 5, 2024
In the Court of Common Pleas of Perry County Civil Division at No(s):
CV-WS-2015-0139

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED: AUGUST 27, 2025**

Plaintiffs/Appellants, Mary and Brett Fisher, (hereinafter "Appellants") appeal from the order of the Court of Common Pleas of Perry County granting summary judgment in favor of Donna Gingerich, Defendant/Appellee, and dismissing the matter with prejudice. This case arose from injuries allegedly sustained by Appellant Mary Fisher (hereinafter "Appellant") while acting as in-home caregiver to Appellee, during which time Appellant attempted to transfer Appellee from her bed to her wheelchair. Appellants allege Appellee caused injury to Appellant by failing to reasonably participate, cooperate or assist in her own care. After careful review, we affirm.

The matter *sub judice* was initiated by filing of a Writ of Summons on February 12, 2015, followed by a Complaint filed on August 13, 2015.

_____

[*] Former Justice specially assigned to the Superior Court.

Appellants allege that Appellee had "certain health conditions, maladies and limitations for and as a result of which she desired attention, care and assistance in her home[,]"[1] and Appellant "as an agent, servant or employee of Angels On Call, provided [that] attention, care and assistance []." Complaint at page 1. Appellants claim that on February 15, 2013, "[Appellee] desired to move from her wheelchair to her bed and requested assistance for this purpose." *Id.* at page 2.

"[Appellee] had previously been provided with and directed to use and participate in the use of a lift devise, sometimes known as a Hoyer Lift, for purposes of allowing for safe movement or transport of her for situations such as that which occurred on February 15, 2013," but "on prior occasions and again on February 15, 2013, the [Appellee] refused to utilize or allow to be utilized the Hoyer Lift device and instead […] insisted on being manually lifted and transferred by [Appellant]." *Id.* Appellee further "refused to allow any skin to skin contact with those from whom she sought assistance and instead insisted and required that she be lifted only by her clothing." *Id.* As a result, Appellant "attempted to manually lift [Appellee] from her wheelchair to her bed without making any contact with [Appellee's] skin and instead lift[ed her] by her clothing and in doing so Appellant was significantly and permanently injured to such a degree that she has required multiple surgical interventions

---

[1] At oral argument before the trial court, Appellee's counsel clarified that Mrs. Gingerich suffered from multiple sclerosis. N.T. May 6, 2024, Argument on Summary Judgment at 2.

as a result." Appellants allege that these injuries "occurred as a result of the actions and inactions of [Appellee] and through no fault of [Appellant's] own." *Id.* at pages 2-3.

Appellants' complaint further asserts that Appellee owed "duties to Plaintiff Mary Fisher and others similarly situated to take reasonable steps in her own care and to reasonably participate and cooperate with Plaintiff Mary Fisher as Mrs. Fisher provided the attention, care and services requested by [Appellee]," which she breached by: "failing to reasonably cooperate, participate or assist in her own requested care and/or services;" by "placing unreasonable demands and limitations on the [Appellant] while [Appellant] was seeking to provide the [Appellee] with her requested attention, care and services;" by "needlessly endangering and otherwise creating an unnecessary risk of harm to [Appellant];" and "failing to take reasonable steps to prevent the harm to [Appellant]." *Id.*

At oral argument before the trial court, Appellants' counsel maintained that Appellee had a duty to cooperate which was breached by the following conduct: "specifically here [. . .] [Appellee] was provided with a Hoyer lift device meant to assist with this transfer that [Appellant] was making manually, and she refused to utilize it[,]" and further "when [Appellant was] required to make the manual transfer, the patient insist[ed] that there be no skin-to-skin contact, leaving [Appellant] with the only mechanism she had, which is to grab [Appellee], [to] lift her by [. . .] the waistline of [her]

sweatpants [. . .] and, essentially, swing and pivot her." N.T. May 6, 2024, Argument on Summary Judgment at 5.

Appellee filed her Answer and New Matter on April 1, 2016, to which Appellants responded on April 19, 2016. Appellee passed away on December 2, 2017; however, her estate was substituted as successor Defendant.[2] The estate filed a Motion for Summary Judgment and a memorandum of law in support of that motion on January 10, 2024, which was the subject of the hearing held on May 6, 2024. In its motion, Appellee estate denied any duty of care owed to Appellant. Appellee estate argued that the existence of such a duty is a necessary element of any negligence cause of action and that the existence of a duty is a question of law. Defendant's Motion for Summary Judgment at page 3 (unpaginated).

Following argument, the lower court granted Appellee estate's motion for Summary Judgment by Order on November 5, 2024, on the basis that Appellee owed no duty to her caregiver.

Appellants timely filed their notice of appeal on November 11, 2024, and, upon order of court, filed their concise statement of matters complained of on appeal on December 20, 2024. The trial court filed its "final memorandum" on January 29, 2025.

---

[2] A Notice of Death relative to Appellee Donna M. Gingerich was filed of record on February 8, 2018, and a Praecipe to Substitute Successor Defendant Pursuant to Pennsylvania Rule of Civil Procedure 2352 was filed by counsel for Appellee on June 20, 2018, naming the estate of Donna M. Gingerich as successor defendant.

On appeal, Appellants raise one issue:

"A.     Whether the trial court erred in granting Defendant's Motion for Summary Judgment when Defendant owed duties to cooperate in her care and not to injure Plaintiff under Pennsylvania law, including *Bell v. Irace*, 1992 Pa. super. LEXIS 220, and with the record evidence a jury could have reasonably found that Defendant breached those duties to Plaintiff in a way that caused Plaintiff to sustain her injuries."

Appellants' Brief at 3.

In reviewing an order granting a motion for summary judgment, we employ the following well-established standard of review:

"Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. ***Chenot v. A.P. Green Services***, Inc., 2006 PA Super 52, 895 A.2d 55, 60-61 (Pa.Super. 2006) (citation omitted).

Motions for summary judgment implicate the plaintiff's proof of the elements of [her] cause of action. ***Chenot***, 895 A.2d at 61 (citation omitted). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). In other words, 'whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report,' Pa.R.C.P. 1035.2(1), and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. ***Chenot***, 895 A.2d at 61.

When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but we may reach our own conclusions. *Id.* We will disturb the trial court's order only upon an error of law or an abuse of discretion. 'Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration.' *Chenot*, 895 A.2d at 61 (citation omitted). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. *Id.* (citation omitted).

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. *Chenot*, 895 A.2d at 61 (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. *Id.* at 61-62 (citation omitted)...."

*Continental Cas. Co. v. Pro Machine*, 916 A.2d 1111, 1115-16 (Pa. Super. 2007).

As the facts here are not in dispute, we review for error of law or abuse of discretion. Here, the sole issue before this court is the existence or non-existence of a duty owed by Appellee to Appellant. In assessing whether the trial court misapplied the law as concerns a negligence claim, we observe that "[t]he primary element in any negligence cause of action is that the defendant owes a duty of care to the plaintiff." *Althaus v. Cohen*, 562 Pa. 547, 552 (2000).

- 6 -

In their brief, Appellants cite this Court's opinion in ***Bell v. Irace***, 1992 Pa. Super. LEXIS 220, in support of their assertion that Appellee owed a general duty imposed on all persons not to place others, including Appellant as her care provider, at risk of harm. However, we find that the instant matter is distinguishable from the matter at issue in ***Bell***. This Court summarized the facts and procedural history of ***Bell*** as follows:

> "On January 25, 1989 plaintiff/appellant Sharon Bell was on duty as an emergency medical technician for Vereb Ambulance Service when Vereb received a call to send an ambulance to the scene of a traffic accident. Defendant/appellee Elizabeth Reis ("Reis") had been walking across an intersection and had been struck by a car driven by co-defendant/appellee John Irace ("Irace"). While administering emergency aid to Reis at the accident scene, **Bell herself was injured by Reis thrashing about and flailing her arms. Sharon Bell filed a complaint** against Irace for negligence in causing the accident by hitting Reis, and **against Reis for negligence in causing the accident by crossing the street when it was unsafe to do so.** Sharon Bell's husband, Wilbert, filed a complaint against Irace and Reis for loss of consortium. Reis and Irace each filed preliminary objections in the nature of a demurrer, which the trial court sustained."

***Bell***, *supra* at *1-*2 (emphasis added).

As noted by Appellants, we did indeed reverse the ruling of the trial court and held:

> "[w]e discern **no material difference between medical personnel injuring a patient while administering aid, and a patient injuring medical personnel while undergoing treatment.** The standards of care differ, yet **each still owes a duty not to injure the other.**"

Appellant's Brief at 10, *citing **Bell v. Irace,*** 1992 Pa. Super. LEXIS 220.

It is thus apparent that the duty incumbent upon the patient/defendant in **Bell** was the ordinary duty to refrain from harming others by engaging in such conduct as crossing a street when it is unsafe to do so or thrashing about wildly with another person in close proximity.

We find that such duty is not implicated by the facts of the instant case and that this holding therefore does not support Appellants' position. Rather, Appellants propose that Appellee had a duty to "participate and cooperate" in her own care which in this case also constituted a duty to consent to the use of certain medical devices and a duty to consent to skin-to-skin contact during transfer. As aptly argued by Appellee, there is simply no authority to support the existence of this greater duty.

Thus, we are left to address the novel question of whether a duty as outlined by Appellant exists.

> "In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than 'the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection' from the harm suffered…To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times.
>
> ***
>
> Thus, the legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals, justice and society. The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of

- 8 -

imposing a duty upon the actor; and (5) the overall public interest in the proposed solution."

***Althaus v. Cohen,*** 756 A.2d 1166, 1169 (Pa. 2000)(internal citations omitted).

We find that these factors weigh heavily against the imposition of a duty in the circumstances *sub judice*.

In examining the relationship between the parties, we note it is not disputed that Appellee was an elderly and disabled woman, suffering from multiple sclerosis, with significant physical limitations that left her reliant on Appellant, as her hired in-home caregiver, to accomplish such goals as eating, bathing, and getting in and out of bed. *See* Defendant's Motion for Summary Judgment at page 2 (unpaginated); N.T. November 18, 2015, Deposition of Appellant at page 9.

While this relationship certainly imposes duties upon Appellant as caregiver, consistent with her training, experience, and ability, the same cannot be said for Appellee based upon Appellants' allegations and the record before this Court. It is apparent that Appellee had insufficient ability to move from her wheelchair to her bed without assistance, and there is no indication that she herself was a trained care provider with knowledge of safe or appropriate practices for moving patients.

It is for this reason, as well, that we, in agreement with the trial court, find that the nature of the risk imposed and foreseeability of the harm also weigh heavily against imposition of a duty. Said the lower Court:

"[Appellee] could not have reasonably foreseen that an injury would have been sustained by [Appellant] during the lifting of [Appellee] as [Appellant] was a trained caregiver. As a matter of public policy, this Court finds it improper to place such a duty on an individual with such severe physical disabilities to have foreseen such injuries to have happened to her trained and knowledgeable caregiver absent any form of unreasonable conduct."

Trial Court Final Memorandum at page 4.

There is indeed nothing in the record to indicate Appellee was a trained, medical professional, and while the risks inherent in utilizing improper techniques to move a patient may be perfectly obvious to an individual with such training or experience, we will not impute that specialized knowledge to the lay person, let alone a care-dependent individual relying upon the training and expertise of a care provider.

Finally, in assessing the overall public interest in imposing the duty Appellant proposes, we find that to hold Appellee owed a duty to her caregiver under these circumstances would open the floodgates of litigation from any care provider who struggled to care for a patient they deemed uncooperative and would allow for individual care providers to file suit against patients they deem difficult.

Under the facts of this case we decline to impose a duty upon a patient to oversee the practices of medical professionals from whom they receive care and treatment.[3]

Thus, for all of the foregoing reasons, we hold that Appellee indeed owed no duty of care as proposed by Appellant, and thus we affirm the ruling of the trial court in granting summary judgment in favor of Appellee.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 08/27/2025

---

[3] To the extent Appellant proposes we impose a duty to consent to a particular method of treatment, in the instant case the use of a Hoyer lift, we decline to do so. To hold that such a duty exists would run contrary to the well-established right to refuse to consent to medical treatment. As we have previously recognized, "[t]he right to refuse medical treatment is deeply rooted in our common law. This right to bodily integrity was recognized by the United States Supreme Court over a century ago when it proclaimed 'no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person. . . .' *Union Pac[]. R[y.] Co. v. Botsford*, 141 U.S. 250, 251, 11 S. Ct. 1000, 35 L. Ed. 734 . . . (1891)." *In re Duran*, 769 A.2d 497, 503 (Pa. Super. 2001).