J-S20032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARCIA WANDELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT PACKER HOSPITAL | : | No. 1532 MDA 2023 |

Appeal from the Order Entered October 16, 2023
In the Court of Common Pleas of Bradford County Civil Division at No(s):
2018-CV-0090

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED: AUGUST 7, 2024**

Appellant Marcia Wandell ("Appellant") appeals from the order entered in the Court of Common Pleas of Bradford County, which granted summary judgment in favor of Appellee Robert Packer Hospital ("Robert Packer"), dismissed the claims in Appellant's complaint with prejudice, and granted the parties' stipulation to dismiss Robert Packer's counterclaim. After a careful review, we affirm.

The relevant facts and procedural history are as follows: On November 2, 2018, Appellant filed a complaint, which she amended on January 31, 2019,

---

[*] Former Justice specially assigned to the Superior Court.

and April 11, 2019.[1]  Therein, Appellant averred that, from April 22, 2016, to April 26, 2016, she was a patient at Robert Packer.  On April 23, 2016, at approximately 10:30 a.m., she was using a bedside commode when it broke, and, as a result, Appellant fell to the ground, thus sustaining serious and permanent injuries.  Appellant averred that Robert Packer employed Christine Mead, RN, who was the assigned nurse at the time of the incident, and she was obligated to conform to the standard of care required of medical agents/employees of Robert Packer.  Appellant averred Nurse Mead deviated from this standard of care.[2]  Appellant alleged injuries including a herniated cervical disc, rotator cuff tear to her right shoulder, right hip pain, and aggravation of pre-existing cervical pain.

Appellant raised two counts in her second amended complaint.  In the first count, she raised a claim of professional negligence in the form of corporate negligence against Robert Packer.  In this vein, she alleged Robert

_____

[1] We note that, in her initial complaint, Appellant named the following defendants: The Robert Packer Hospital, Guthrie Robert Packer Hospital, Guthrie Healthcare System, Guthrie Medical Group, P.C., Guthrie Medical Group of Pennsylvania, P.C., The Guthrie Clinic, Guthrie Clinic, Inc., and Guthrie Clinic a Professional Corporation.  Thereafter, the trial court approved a stipulation, and all defendants, except for Robert Packer Hospital, were dismissed from the matter.  Moreover, Appellant's April 11, 2019, complaint names solely Robert Packer Hospital as a defendant.

[2] Appellant also asserted that Nurse Mead was assisted by a certified nursing assistant ("CNA"), but Appellant was not sure of the name of the CNA. She averred the CNA was also obligated to conform to the standard of care required of medical agents/employees of Robert Packer, and the CNA deviated from this standard of care.

Packer was negligent in failing to furnish competent medical care, including proper supervision and assistance while Appellant used the bedside commode. She also alleged Robert Packer failed to provide adequate training to its staff regarding fall prevention, use reasonable care in maintaining safe and adequate facilities/equipment, provide an environment free of hazards for patients, and exercise reasonable care to protect Appellant.

In her second count, Appellant raised a claim of vicarious liability averring Robert Packer was vicariously liable for the negligent acts and/or omissions of its employees, including Nurse Mead, who treated Appellant. Moreover, pursuant to Pennsylvania Rule of Civil Procedure 1042.3, Appellant attached a certificate of merit to her second amended complaint.[3]

---

[3] Specifically, Appellant alleged as follows in the certificate of merit:

> I, [Appellant's counsel], hereby certifies that: an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by [Robert Packer] in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm; AND the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that the other licensed professionals for whom the defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm.

Certificate of Merit, dated 12/31/18.

On May 3, 2019, Robert Packer filed an answer with new matter and a counterclaim for statutory insurance fraud, 18 Pa.C.S.A. § 4117. Therein, Robert Packer averred that, on April 22, 2016, Appellant was admitted to the hospital for kidney stones, as well as a possible renal cortical mass, and she had a ureteral stent placed during surgery on that date. At the time of her admission, Appellant had pre-existing disc problems due to a motor vehicle accident in 2000. She also had inner ear problems and post-traumatic headaches from a motor vehicle accident in 2013.

Robert Packer alleged that, on April 22, 2016, prior to Appellant's surgery, the nursing staff assessed Appellant and initially found her to be low risk on the fall protocol scale. She was walking independently and with no mobility limitations. However, after Appellant reported taking two or more medications that increased the risk of falling, the nursing staff changed her assessment to a moderate risk fall protocol. After the surgery on April 22, 2016, Appellant was assessed to be high risk on the fall protocol scale, and appropriate precautions in accordance with Robert Packer's policies were put into place.

Robert Packer averred that, contrary to Appellant's assertion, an eyewitness reported that, while the bedside commode broke, Appellant did not fall to the floor. Rather, she remained in the frame of the seat. Robert Packer averred Appellant's claims of falling from the bedside commode onto the ground, and sustaining injury therefrom, were fraudulent.

On August 7, 2019, Appellant filed preliminary objections to Robert Packer's counterclaim, and Robert Packer filed an answer in opposition. On December 13, 2019, the trial court denied Appellant's preliminary objections.

On March 22, 2021, Appellant gave her deposition testimony. Therein, Appellant relevantly testified that she had surgery on April 22, 2016, at Robert Packer. *See* Appellant's Deposition, 3/22/21, at 82. Appellant indicated that her hospital bed had a call button, and the hospital staff did not want her getting out of bed by herself. *Id.* at 83. Appellant testified that, when she needed to use the bathroom, she would press the call button. *Id.* at 85. In response, two nurses would generally come in the room, turn off the call button alarm, place her on the bedside commode, stay with her while she used the bedside commode, put her back in bed when she was finished, and turn the call button alarm back on in case she needed it again. *Id.* She acknowledged she used the bedside commode in this manner without incident on April 22, 2016, and she had no difficulties sitting on the bedside commode. *Id.* at 86-88.

Appellant acknowledged that an entry in the nursing log for April 23, 2016, at 9:49 a.m., indicated that fall precautions were being maintained, the bed call button alarm was in place, and the patient (Appellant) had been asking appropriately for assistance out of bed to pivot to use the bedside commode. *Id.* Appellant testified that, at approximately 10:30 a.m. on April 23, 2016, she used the call button to get a nurse's attention because she

needed to use the bedside commode. *Id.* at 91. She indicated one nurse came into the room, placed her on the bedside commode, and left the room. *Id.* at 91-92. After Appellant urinated, she continued to sit on the bedside commode waiting for the nurse to return to assist her back into bed. *Id.* at 97. She did not attempt to use the call button to alert the nurse that she was finished. *Id.* at 97-99. While she waited, and before the nurse returned, the bedside commode broke, and she landed on the floor. *Id.*

Appellant indicated she called out for help, and two nurses responded. *Id.* at 101. The nurses helped her off the floor, changed her gown, put her back into bed, and put the call button alarm on so she could use it again if needed. *Id.* Appellant testified that, shortly after the incident, a maintenance man came into the room to examine the bedside commode, and he said he was surprised the commode had broken. *Id.* at 102.

Appellant testified she suffered various injuries from the fall. She testified that, after this incident, "they didn't bring in another portable bedside commode. The nurses would come in and take me to the restroom and wait outside the door." *Id.* at 143.

On November 29, 2021, the trial court issued case management deadlines, which called for discovery to end on January 14, 2022, and for Appellant to produce expert reports by February 11, 2022. Appellant requested two extensions to produce her expert reports, which the trial court granted.

Thereafter, on March 7, 2022, Appellant served Robert Packer with a narrative report from Jason Gallagher, M.D., discussing the treatment of Appellant's shoulder/rotator cuff injury.[4] On March 25, 2022, Appellant served Robert Packer with a narrative report from Timothy Damron, M.D., and James Buschbach, M.D., discussing the treatment of Appellant's knee.[5] On April 18,

_____

[4] Dr. Gallagher's entire report is as follows:

> [Appellant] was first evaluated in my office on February 27, 2017. She stated on that date that she fell from a commode and injured her right shoulder. Her right shoulder was evaluated, and an MRI was obtained. This demonstrated a full-thickness supraspinatus tear. She subsequently underwent arthroscopic rotator cuff repair of her right shoulder on 7-19-2017. Her postoperative course was uneventful, and she was examined on September 1, 2017.
>
> She returned to the office on 6/14/2019 complaining of numbness tingling bilateral upper extremities and burning sensation in the right deltoid and biceps region. Repeat MRI of the right shoulder was then performed on July 5, 2019. This MRI demonstrated intact rotator cuff repair.
>
> Based on the patient's history and arthroscopic findings of a right-side rotator cuff tear, these findings are consistent with the stated history that the patient fell off a commode on April 23, 2016. Patient did suffer moderate pain in the preoperative time. [Appellant] has a permanent disability of the right shoulder of 25%. She may require further treatment for the right shoulder if her symptoms recur.

Report of Dr. Gallagher, 3/7/22.

[5] Notably, in the report, Drs. Damron and Buschbach specifically stated:

> With respect to questions from [Appellant's] lawyer: (Of note, since [we are] only caring for [Appellant's] right knee, the following [report] will be relative to her right knee. For any other body site injury, she will need to be evaluated in the determinations made by those physicians who would be evaluating and caring for her in that regard.)

Report of Drs. Damron and Buschbach, 3/25/22.

2022, Appellant served Robert Packer with the *curriculum vitae* of Dr. Gallagher and Dr. Damron.  Appellant provided no other expert reports.

On May 11, 2022, Robert Packer provided expert reports from Elizabeth E. Hill, RN, PhD, and Christopher Metzger, M.D.  Nurse Hill's report reviewed the nursing care provided to Appellant while she was a patient at Robert Packer.[6] Dr. Metzger's report discussed the fact that Appellant's alleged injuries were not caused by a fall or trauma; but rather, the injuries were pre-existing and degenerative conditions.

On May 16, 2022, Robert Packer filed a motion for summary judgment, along with a brief in support thereof, requesting the trial court dismiss Appellant's complaint with prejudice.  Specifically, Robert Packer alleged Appellant failed to produce the requisite expert reports necessary to establish a *prima facie* case of either professional corporate negligence or vicarious liability for the alleged medical negligence of the nursing staff.

Robert Packer indicated Appellant produced a narrative report from her treating orthopedic surgeon, Dr. Gallagher, who discussed Appellant's right shoulder rotator cuff injury and treatment; however, Dr. Gallagher provided no analysis of the negligence claims.  Moreover, Robert Packer noted Appellant

_____

[6] Relevantly, Nurse Hill opined in her report that there was ample documentation supporting the conclusion that Robert Packer met the applicable standard of care regarding an individualized plan for Appellant, including maintaining fall precautions and assisting Appellant.  She opined that, while the commode unexpectedly malfunctioned, the nursing staff acted prudently and for the safety of Appellant.

did not allege a knee injury in her complaint, so the report of Drs. Damron and Buschbach was not relevant to Appellant's claims of professional negligence.

Robert Packer asserted that Appellant's claims involve issues of corporate hospital and nursing care beyond the knowledge of a layperson, and, thus, she was required to produce a medical expert to establish the elements of duty, breach, causation, and damages. That is, Robert Packer argued Appellant was required to file expert reports setting forth the accepted standards of care, opining that Robert Packer directly (and vicariously through the nursing staff) deviated from the accepted standards of care, and that such deviation was the proximate cause of Appellant's injuries. Robert Packer averred that Appellant failed to produce such an expert and, as a matter of law, her complaint must be dismissed with prejudice. Robert Packer also averred that, absent Appellant's necessary expert reports, there were no genuine issues of material fact as to any of the elements necessary to establish a *prima facie* case of professional negligence.

On June 27, 2022, Appellant filed a brief in opposition to Robert Packer's motion for summary judgment. Therein, Appellant acknowledged that she did not provide expert reports regarding the relevant standard of care and/or breach of the standard of care. However, she claimed that expert reports were unnecessary in this case since the matter is so simple, and the lack of

skill or want of care so obvious, as to be within the range of the ordinary experience and comprehension of laypersons.

On July 1, 2022, the trial court held oral argument on Robert Packer's motion for summary judgment. By order entered on November 23, 2022, the trial court granted Robert Packer's motion for summary judgment. Specifically, the trial court held that Appellant's claims of professional corporate negligence and vicarious liability required expert testimony to establish the applicable standard of care and the deviation therefrom. **See** Trial Court Opinion, filed 11/23/22, at 4. Thus, since Appellant failed to produce the necessary experts, she was unable to establish a *prima facie* claim of professional corporate negligence as to Robert Packer or vicarious liability for the alleged negligence of a registered nurse and a certified nursing assistant. **See id.** The trial court specifically rejected Appellant's argument that her claims of negligence were so obvious or within the realm of a layperson's understanding that an expert was unnecessary. **Id.**

Appellant filed a notice of appeal from the trial court's November 23, 2022, order; however, we quashed the appeal because the trial court had not disposed of Robert Packer's counterclaim for statutory insurance fraud. That is, we determined the appeal was not from a final order. **See Wandell v. Robert Packer Hospital**, No. 1744 MDA 2022 (Pa.Super. filed 5/2/23) (*per curiam* order). Thereafter, on October 16, 2023, the trial court approved a stipulation dismissing Robert Packer's counterclaim, and on November 6,

2023, Appellant filed a timely appeal from the final order. The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) statement, and, consequently, no such statement was filed. On November 22, 2023, the trial court filed a brief Rule 1925(a) opinion.

On appeal, Appellant sets forth the following issue in her "Statement of the Questions Involved" (verbatim):

1. Whether the court abused its discretion and committed an error of law by granting Defendant's Motion for Summary Judgment and concluding expert testimony was necessary and that the negligence in this matter was not so obvious that a lay juror could recognize it?

Appellant's Brief at 5.

On appeal, Appellant admits she did not provide expert reports setting forth a *prima facie* claim of professional corporate negligence or vicarious liability.[7] **See** Appellant's Brief at 10. However, Appellant avers that she was not required to do so. In this vein, she alleges that Robert Packer gave her a defective commode and insufficient assistance while she was using it. **See id.** This caused her to fall to the ground, and the injuries she suffered were the natural and probable result of the accident. **See id.** She claims that the corporate negligence of Robert Packer, as well as the medical negligence of

_____

[7] Accordingly, we need not examine the reports provided by Appellant to determine whether the expert reports create a genuine issue of material fact and/or were sufficient as a matter of law to prove a *prima facie* case of professional negligence. In any event, we note that no expert report proffered by Appellant discussed the acceptable standard of care and/or whether there was a deviation therefrom in this case.

- 11 -

the nursing staff for whom Robert Packer is vicariously liable,[8] is so obvious or within the realm of a layperson's understanding that expert reports/testimony is not needed. She claims the trial court erred in holding otherwise, and, consequently, erred in concluding she did not produce evidence of facts essential to her cause of action.

We observe that, in reviewing matters of summary judgment, we are governed by the following well-established principles:

> Our scope of review of an order granting summary judgment is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. ***Chenot v. A.P. Green Services, Inc.***, 895 A.2d 55, 60-61 (Pa.Super. 2006) (citation omitted).
>
> Motions for summary judgment implicate the plaintiff's proof of the elements of [her] cause of action. ***Chenot***, 895 A.2d at 61 (citation omitted). Summary judgment is proper "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). In other words, "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report," Pa.R.C.P. 1035.2(1), and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or

---

[8] We note that, particularly as it applies to her claim of vicarious liability, Appellant admits her negligence claim is grounded in "medical malpractice" as opposed to "general negligence." ***See*** Appellant's Brief at 12.

- 12 -

(2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense. ***Chenot***, 895 A.2d at 61.

When reviewing a grant of summary judgment, we are not bound by the trial court's conclusions of law, but we may reach our own conclusions. ***Id***. We will disturb the trial court's order only upon an error of law or an abuse of discretion. "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration." ***Chenot***, 895 A.2d at 61 (citation omitted). Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law, exercises its discretion in a manner lacking reason, or does not follow legal procedure. ***Id***. (citation omitted).

Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. ***Chenot***, 895 A.2d at 61 (citation omitted). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused. ***Id***. at 61-62 (citation omitted).

***Continental Cas. Co. v. Pro Machine***, 916 A.2d 1111, 1115-16 (Pa.Super.

2007).

Pa.R.C.P. 1035.2 governs motions for summary judgment and provides

the following, in relevant part:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who

will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

The official note to Rule 1035.2 states, in pertinent part:

*Note*: Rule 1035.2 sets forth the general principle that a motion for summary judgment is based on an evidentiary record which entitles the moving party to judgment as a matter of law.

The evidentiary record may be one of two types. Under subdivision (1), the record shows that the material facts are undisputed and, therefore, there is no issue to be submitted to a jury.

***

Under subdivision (2), the record contains insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to a jury. The motion in this instance is made by a party who does not have the burden of proof at trial and who does not have access to the evidence to make a record which affirmatively supports the motion. To defeat this motion, the adverse party must come forth with evidence showing the existence of the facts essential to the cause of action or defense.

* * *

Only the pleadings between the parties to the motion for summary judgment must be closed prior to filing the motion.

Pa.R.C.P. 1035.2, Note.

In the case *sub judice*, Appellant raises a claim of professional negligence in the form of corporate negligence against Robert Packer. In **Thompson v. Nason Hospital**, 527 Pa. 330, 591 A.2d 703 (1991), our Supreme Court first adopted the theory that a corporation, specifically a hospital, can be held directly liable for corporate negligence. Our Supreme Court explained the doctrine of corporate negligence as follows:

Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.

*Thompson*, *supra*, 591 A.2d at 707.

In defining the contours of this theory, our Supreme Court channeled a hospital's duties into the following four general areas:

(1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Id.* (citations omitted).

Because the duty to uphold the proper standard of care runs directly from the hospital to the patient, an injured party need not rely on the negligence of a third-party, such as a doctor or nurse, to establish a cause of action in corporate negligence. Instead, corporate negligence is based on the negligent acts of the institution. A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees. Thus, under this theory, a corporation is held directly liable, as opposed to vicariously liable, for its own negligent acts.

*See Welsh v. Bulger*, 548 Pa. 504, 698 A.2d 581, 585 (1997) (internal citations and quotation marks omitted).

With the four duties and the nature of a corporate negligence claim in mind, we now examine the three elements necessary to establish a *prima*

- 15 -

*facie* case of corporate negligence. The plaintiff must establish all of the following:

> 1. [the hospital] acted in deviation from the standard of care;
>
> 2. [the hospital] had actual or constructive notice of the defects or procedures which created the harm; and
>
> 3. [ ] the conduct was a substantial factor in bringing about the harm.

**Whittington v. Episcopal Hospital**, 768 A.2d 1144, 1149 (Pa.Super. 2001)

(*citing* **Welsh**, *supra*, 698 A.2d at 585).

We have elaborated on these concepts as follows:

> The **Thompson** theory of corporate liability will not be triggered every time something goes wrong in a hospital which harms a patient. Acts of malpractice occur at the finest hospitals, and these hospitals are subject to liability under theories of *respondeat superior* or ostensible agency. To establish corporate negligence, a plaintiff must show more than an act of negligence by an individual for whom the hospital is responsible. Rather, **Thompson** requires a plaintiff to show that the hospital itself is breaching a duty and is somehow substandard. This requires evidence that the hospital knew or should have known about the breach of duty that is harming its patients.
>
> Thus, a hospital is not directly liable under **Thompson** just because one of its employees or agents makes a mistake which constitutes malpractice. Just as regular negligence is measured by a reasonable person standard, a hospital's corporate negligence will be measured against what a reasonable hospital under similar circumstances should have done. **Thompson** contemplates a kind of systemic negligence, such as where a hospital knows that one of its staff physicians is incompetent but allows that physician to practice medicine anyway; or where a hospital should realize that its patients are routinely getting infected because the nursing staff is leaving catheters in the same spot for too long, yet the hospital fails to formulate, adopt or enforce any rule about moving catheters. **Thompson** does not propound a theory of strict liability....Though broadly defined, **Thompson** liability is still fault based.

*Edwards v. Brandywine Hospital*, 652 A.2d 1382, 1386-87 (Pa.Super. 1995) (citations omitted). *See Corey v. Wilkes-Barre Hospital Company, LLC*, 307 A.3d 701, 710 (Pa.Super. 2023) (*en banc*) (quotation omitted).

Pennsylvania courts, in recognition of the foregoing, have limited recovery for corporate negligence to instances in which a plaintiff demonstrates "systemic negligence" on the part of a hospital. *Id*. *See Welsh*, *supra*, 698 A.2d at 585 ("A cause of action for corporate negligence arises from the policies, actions or inaction of the institution itself rather than the specific acts of individual hospital employees.").

Moreover, regarding a claim of corporate negligence, our Supreme Court has stated that, "unless the hospital's negligence is obvious, an expert witness is required to establish two of the three prongs: that the hospital deviated from the standard of care and that such deviation was a substantial factor in bringing about the harm." *Whittington*, 768 A.2d at 1149 (citing *Welsh*, *supra*, 698 A.2d at 585).

Furthermore, in addition to proceeding on a direct theory of corporate negligence against Robert Packer in the case *sub judice*, Appellant also raised a claim of vicarious liability based on the alleged medical negligence of its nursing staff.[9] Generally, to demonstrate the negligence of a nurse, a plaintiff

_____

[9] Regarding vicarious liability, our Supreme Court has explained:
*(Footnote Continued Next Page)*

must establish: "(1) a duty owed by the health care provider to the patient; (2) a breach of that duty; (3) the breach was the proximate cause of, or a substantial factor, in bringing about the harm suffered by the patient; and (4) damages suffered by the patient that were a direct result of that harm." ***Nogowski v. Alemo-Hammad***, 691 A.2d 950, 956 (Pa.Super. 1997) (*en banc*). ***See Nigon v. Jewell***, 313 A.3d 1124 (Pa.Super. 2024) (indicating medical malpractice is the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services).

---

Vicarious liability is a policy-based allocation of risk. Vicarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it. Once the requisite relationship (*i.e.,* employment, agency) is demonstrated, the innocent victim has recourse against the principal, even if the ultimately responsible agent is unavailable or lacks the ability to pay.

Where a corporation is concerned, the ready distinction between direct and vicarious liability is somewhat obscured because we accept the general premise that the corporation acts through its officers, employees, and other agents. The corporation, as principal, assumes the risk of individual agents' negligence under the theory of vicarious liability. In this scenario, the corporation's liability is derivative of the agents' breach of their duties of care to the plaintiff.

***Scampone v. Highland Park Care Center, LLC***, 618 Pa. 363, 57 A.3d 582, 597 (2012) (quotation marks, quotations, and citations omitted).

Moreover, except where it is obvious or within the realm of a layperson's understanding, the plaintiff must present expert testimony establishing the generally accepted standard of care, and the health care provider's conduct deviation from the accepted standard of care. ***Shannon v. McNulty***, 718 A.2d 828, 831 (Pa.Super. 1998) (citation omitted). That is, expert testimony is necessary for medical malpractice claims unless the "narrow exception" applies: "no such testimony is required in instances of obvious negligence, *i.e.*, circumstances in which the medical and factual issues presented are such that a lay juror could recognize negligence just as well as any expert." ***Fessenden v. Robert Packer Hospital***, 97 A.3d 1225, 1230 (Pa.Super. 2014) (citation omitted). "In those cases, the doctrine of *res ipsa loquitur* allows a fact-finder to infer from the circumstances surrounding the injury that the harm suffered was caused by the negligence of the defendant." ***Id.*** (citation omitted).

In the case *sub judice*, in holding Appellant's claim of corporate negligence against Robert Packer, as well as her claim of vicarious liability for the alleged medical negligence of the nursing staff, was not so obvious or within the realm of a layperson's understanding that an expert was unnecessary, the trial court indicated the following:

> [Appellant] claims that [Robert Packer] failed to provide adequate and appropriate supervision and appropriate assistance devices to prevent falls and accidents; failed to provide an environment that was free of accident hazards; failed to use reasonable care in the maintenance of said facilities and equipment; [and] failed to provide adequate training to staff

regarding fall prevention. Expert testimony is necessary to establish the applicable standard of care and the deviation from that standard and causation. Here, [Appellant] has produced no such expert. This is not a case where the negligence is so obvious. What was the standard of care for a patient such as [Appellant] after surgery [when using the bedside commode] and what was the deviation from that standard?

In the absence of expert report/testimony, [Appellant] is not able to establish a *prima facie* claim of…corporate negligence as to…Robert Packer [or a claim of vicarious liability for the alleged negligence of its nurses].

Trial Court Opinion, filed 11/23/22, at 4.

We find no abuse of discretion or error of law. Appellant suggests that Robert Packer's corporate negligence, as well as vicarious liability for the nursing staff's alleged negligence, may be presumed solely because the nurse left the room while she was using the bedside commode, which then broke. However, as indicated *supra*, as it relates to the claim of corporate negligence, Robert Packer's omissions/actions must be "measured against what a reasonable hospital under similar circumstances should have done." *Edwards*, 652 A.2d at 1386-87.

For example, what are the reasonable hospital standards regarding the inspection or maintenance of bedside commodes, the policies for nursing staff regarding assisting a patient such as Appellant while she uses the bedside commode, and the policies regarding the use of bedside commodes vs. regular toilets for a patient such as Appellant? Similar to the trial court, we conclude these issues relate to the accepted standard of care (*i.e.*, what a reasonable hospital under similar circumstances should have done), as well as whether

Robert Packer deviated from the standard of care. Moreover, similar to the trial court, we conclude these inquiries are not so obvious or within the knowledge of laypeople so as to obviate the need for expert testimony. *See Ditch v. Waynesboro Hospital*, 917 A.2d 317 (Pa.Super. 2007) (where the estate averred hospital personnel failed to properly restrain patient suffering from stroke who fell from hospital bed while being transported from emergency room to hospital room, and the hospital failed to properly train staff and have proper policies in place, expert testimony was needed to educate the jury on the proper standard of care for restraining patients). *See also Rodriguez v. St. Luke's Hospital-Bethlehem*, No. 3198 EDA 2022, 2024 WL 195755 (Pa.Super. filed 1/18/24) (unpublished memorandum)[10] (holding negligence cannot be presumed solely because the plaintiff avers that he fractured his ankle during physical therapy, and expert witness testimony would be needed to establish the appropriate standard of care and breach of that standard concerning the proper method to transfer a patient from a bed and the support needed to secure him in a standing position).

Additionally, as it relates to Appellant's claim of vicarious liability for the alleged negligence of the nursing staff, we agree with the trial court that the medical issues regarding the standard of care and whether the nursing staff

---

[10] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value). We find *Rodriguez* persuasive in the case *sub judice*.

- 21 -

deviated from the standard of care required expert reports. For instance, expert testimony from a qualified witness would be necessary to explain to a jury the impact of Appellant's medical condition on her ability to use the bedside commode without assistance, use the call button to signal the nurse when she was finished using the bedside commode, and react appropriately when the bedside commode broke.

Further, expert testimony would have been necessary to determine whether a patient in Appellant's condition should have been taken to the restroom instead of using the bedside commode. Simply put, specialized knowledge was needed to assess the risk of potential fall posed by the use of the bedside commode without supervision given Appellant's medical history and current health.

Thus, we conclude that, based on the cause of action of vicarious liability as pled in Appellant's complaint, as well as the discovery provided with regard to the cause of action, "the matter under investigation" is not so simple, and the want of care is not so obvious as "to be within the range of the ordinary experience and comprehension of even nonprofessional persons." *Chandler v. Cook*, 438 Pa. 447, 265 A.2d 794, 796 n.1 (1970) (citation omitted). That is, to establish a *prima facie* case of medical negligence as to the nursing staff, for which Appellant sought to hold Robert Packer vicariously liable, Appellant was required to produce an expert report to establish the accepted medical standard of care and the nurses' variance therefrom. *See Chandler*, *supra*

(holding expert witness required for the plaintiff to establish medical negligence where the physician, who was seventy-one years old, performed a surgery with limited use of his left hand); *Grossman v. Barke*, 868 A.2d 561 (Pa.Super. 2005) (holding that, where a physician told a diabetic patient to sit on an examination table, the physician left the room, and the patient fell off the examination table, expert testimony was needed to explain to the jury the impact of the patient's medical condition on her ability to stay safely seated on an examination table, as well as testify to a reasonable degree of medical certainty that the physician's actions or omissions deviated from the applicable standard of care).

For all of the foregoing reasons, we conclude the trial court properly held that Appellant was required to produce expert reports to establish the standard of care and the relevant deviation therefrom in support of her claims of direct corporate negligence against Robert Packer and vicarious liability for the alleged negligence of the nursing staff. Accordingly, on the record before us, Appellant has failed to produce evidence of facts essential to her negligence claims to submit to a jury such that summary judgment is appropriate. Therefore, no genuine issues of material fact exist, and Robert Packer was entitled to judgment as a matter of law. *See* Pa.R.C.P. 1035.2. Consequently, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/07/2024